KENT & OBEAR, Appellants, v. ALLEN, Respondent.

1. Where the owner of land sends a real estate broker into market to dispose of it without any directions as to the title to be conveyed, he thereby gives assurance to the world that he has a valid title.
2. The doctrine of marketable titles is a purely equitable doctrine.

*Appeal from St. Louis Court of Common Pleas.*

Plaintiffs, real estate brokers, allege in substance in their petition that the defendant, Allen, employed them to sell for him a certain tract of forty-one acres of land ; that defendant represented to plaintiffs that he had a good and perfect title to said land, and authorized and directed plaintiffs to sell the same for the sum of $41,000, on the following terms, &c. ; that plaintiffs, relying upon said representations, and acting in accordance with the instructions given, bargained with one Meier for the sale of said land ; that defendant, Allen, did not have a good title to said tract of land ; and that by reason thereof said Meier refused to complete the said purchase. Plaintiffs claim the sum of $1025, being 2½ per cent. upon the purchase money, as a compensation for the labor performed by them.

The cause was tried by the court. The finding of the facts by the court is as follows : " That the plaintiffs are real estate brokers in the city of St. Louis ; that, as such, they undertook to sell the land in question for the defendant ; that there was no special agreement between the parties as to what should be paid to the plaintiffs for their services ; that they negotiated a sale with Adolphus Meier for said land, the terms thereof to be one half cash, and the other half in three equal payments, at one, two and three years respectively ; that the price to be paid therefor by said Meier was $41,000. The commission usually charged by real estate brokers at that time, when no special agreement for their services was made, was 2½ per cent. on the price at which the land is sold ; but when the sale is not consummated, the broker receives nothing. If, however, the

negotiations are made, and the sale is not effected in consequence of a defective title, then there is no custom as to the rates of compensation, but each transaction is left uncontrolled by any custom. The court finds that in this case the defendant did, after the negotiations aforesaid had been made by the plaintiffs for the defendant, tender to said Meier the following deed, offered in evidence, but the said Meier declined completing the purchase, on the ground that he had been advised by counsel that said deed would not pass the title in fee simple to him, the said Meier. [Here follows a deed with covenants of warranty, conveying to said Meier the said tract of forty-one acres, described in the petition. This deed was executed by Thomas Allen, and his wife Ann R. Allen, and William Russell, and is dated September 1st, 1853.] The following marriage contract, and deed from Russell to Ann R. Allen, offered in evidence, are genuine, were duly executed by the parties thereto, as the same purport to have been and were duly recorded in the office of the recorder of St. Louis county. [Here follow said marriage contract and settlement, and said deed. The said marriage contract is dated July 6, 1842, and was executed by Thomas Allen, Ann R. Russell, and William Russell, father of said Ann. The first, second and fourth articles of said contract are as follows : " ARTICLE FIRST. That all real estate, slaves, goods and chattels, and all property and effects whatsoever, by the said William Russell given, granted or conveyed, or which shall be given, granted or conveyed *to the said Thomas and Ann, or either of them, or to their use, or the use of either of them as aforesaid,* and the proceeds, rents, issues and profits thereof, shall be held, used, enjoyed and disposed of according to the terms, clauses, stipulations, conditions, limitations and reservations in the deeds or writings conveying the same respectively contained, touching the parties or the tenure, use and enjoyment of the said estate and property therein and thereby respectively granted or conveyed, and not otherwise, except as herein afterwards specially provided. ARTICLE SECOND. That the parties hereunto (all

concurring) may, at any time, during the continuance of said marriage, or in case of the death of said husband or wife, the other surviving, such survivor and the said William Russell may sell, dispose of, grant and convey any of the estate, property and effects above mentioned or referred to, all the parties hereto, or in case of the death of either said husband or wife the survivor of them and said William Russell joining in such sale or other disposition, and in the deeds or conveyances thereof, and not otherwise, except where provision for such sale or disposition of any property is made in the deed or writing by which the same was conveyed to the said parties of the first and second part, or either of them as aforesaid, in which case such sale and disposition may either be made according to the terms of such deed or writing, or as in this article above provided. ARTICLE FOURTH. That the said William Russell, intending to provide FURTHER an annual income for said Ann, equal to the best lawful interest that can be had on twenty thousand dollars in money ; to accomplish which purpose, the said William Russell shall and will, from time to time, as soon as in his opinion it may be advantageously done, make investments of money in the purchase of productive real estate, to be selected by him within the county of St. Louis, amounting in the whole to $20,000 ; and upon such purchase being made, to make and execute such deeds, conveyances, assurances and covenants as shall be good and sufficient in law to assure the fee simple estate in the property so purchased in trust or otherwise, and to secure the payment of the rents thereof and the disposition of the estate in the manner following—that is to say : The payments of the rents, issues and profits (after deducting taxes and public charges and necessary expenses of repairs) semiannually to said Ann or to her written order, and to and for her sole and separate use during her natural life ; and in case said Ann shall die leaving a child or children surviving her, then such payment to be made to such child or children, until the youngest of them shall arrive at the age of twenty-one years ; at which time, or sooner, if all the children of said Ann

then living shall be of the age of twenty-one years or more, the fee simple in said estate shall be vested in such surviving child or children of said Ann, and the descendants of such (if any) as shall before then have departed this life, in the same manner as if said Ann had died intestate seized in fee of said estate. In like manner, if said Ann shall depart this life leaving no child surviving her, but shall have a grandchild or grandchildren so surviving, then such payment to be made to such grandchildren of said Ann until the youngest attain the age of twenty-one years; at which period, or sooner, after the death of said Ann, if all her grandchildren then living shall be of the age of twenty-one years or more, the estate shall be vested in them and their descendants as aforesaid. But if said Ann shall depart this life without leaving any children or grandchildren surviving her as aforesaid, or those surviving her shall die before the happening of the contingency by which the fee simple would be vested in them according to the provisions of this article, then the absolute estate in said estate shall revert to and be vested in said William Russell and his heirs and assigns forever."

William Russell, by said deed above mentioned, dated June 9th, 1843, conveyed to his daughter, Ann R. Allen, seven tracts or parcels of land, of which one was the tract of forty-one acres, the title to which is called in question in the present suit. This deed purported to have been made "in consideration of the parental affection and regard of him, the said William Russell, for his said daughter, and his desire to promote and provide for her means of honorable support, and also in fulfilment of the purposes contemplated by a certain agreement, dated July 6th, 1842, signed by Thomas Allen, Ann R. Russell, (now Ann R. Allen,) and William Russell, &c., which said agreement is hereby referred to as part and parcel of this deed," &c. The habendum of this deed is as follows: "To have and to hold the above described seven tracts, pieces or parcels of land, amounting in all to about the quantity of one thousand and eighty-five acres of land, be the same more

or less, together with all the improvements thereon, &c., to and for the sole and separate use of the said Ann R. Allen, during her natural life, and for the above and other good and valuable considerations and inducements ; and in accordance with the agreement aforesaid, this deed further witnesseth, that, from and after the time of the decease of the said Ann R. Allen, all and singular the above described seven tracts, pieces or parcels of land, with all the rights, privileges and appurtenances thereunto belonging, are hereby given, granted, bargained, sold and conveyed by the said William Russell, in absolute property, in fee simple, to such child or children of the said Ann R. Allen, if any, as may have survived her, and have attained or afterwards attain the age of twenty-one years, in equal shares to each, if more than one of such children, and to the descendants (if any) of such of them as shall have before then departed this life, the same share which such deceased child of the said Ann, if alive, would have held in the land aforesaid under this claim. To have and to hold the aforesaid seven tracts, pieces and parcels of land, with all the rights, privileges and appurtenances thereunto belonging, from and after the decease of the said Ann, to such child or children (if any) of her the said Ann R. Allen, and to the descendants of such of them as may have before then departed this life, as above provided, and to their heirs and assigns forever. No one of such children or their descendants shall claim, hold or control the fee simple estate in the lands above conveyed until such child or the descendants of such deceased child of the said Ann shall have arrived at twenty-one years of age ; but the share of such, with the incomes and profits thereof, shall be held and managed for the use of such minor, by a trustee to be appointed by the proper court having jurisdiction of such matters, until he or she, so being a minor, arrives at twenty-one years of age, when the fee simple of his or her share in said lands shall become absolutely vested in such child or children, or their descendants, of her the said Ann R. Allen. But if there be no child or children, or descendants of a child or chil-

dren, of her the said Ann R. Allen surviving her, and who have obtained or live to obtain the age of twenty-one years, in that case the title to all the aforesaid seven tracts, pieces or parcels of land, with all the rights, privileges and appurtenances thereunto belonging, shall revert to and become absolutely vested in fee simple in him the said William Russell and his heirs and assigns forever."]

It was admitted on the trial, that, prior to and at the date of the marriage contract and of the deed from Russell to Ann R. Allen, as aforesaid, the title in William Russell to the land in question was an undefeasible estate in fee simple, and that all the title Thomas Allen had or could convey in and to the said forty-one acres was such as the said Allen and his wife and said Russell had as aforesaid. The court further finds that the failure of the plaintiffs to complete the sale with Meier was not caused by any refusal or neglect on the part of the defendant to comply with the terms of sale on his part, he having tendered the aforesaid deed to Meier; nor did he when he employed the plaintiffs to negotiate a sale of the said land make any representations to the plaintiffs as to the fee simple ownership of said land, or in whom the fee was, or what was the real title thereto. Whereupon the court declares that plaintiffs are not entitled to recover."

*R. M. Field*, for appellants.

I. The first point taken by the appellants is, that they were employed by the respondent to perform a particular service, and as that service, under the finding of the court below, has been fully performed, they are entitled to compensation according to the general usage, by reference to which the contract must be construed. It is of no importance whether the service under the employment has turned out to be beneficial to the respondent or not. He was pleased to employ the appellants to find a purchaser for certain lands, just as he might have engaged them to do any other work or labor. If the performance of this service on the part of the appellants has resulted in showing that the respondent had no marketable title in the lands which he

offered for sale, *that* may be his misfortune, but certainly it is not the fault of the appellants. They have done all that falls within the scope of their undertaking, and they have fairly earned their compensation.

II. But if the plaintiffs were not entitled to the customary commission where the sale is carried out, they ought at least to receive a reasonable compensation for their labor, to be ascertained as in cases of *quantum meruit*.

III. The respondent could not make a fee simple title to the land which he offered for sale. The deed of June 9, 1843, was plainly made in pursuance of 4th article; and the provisions of the 2d article did not extend to the property conveyed by it. Under that deed, the children and grand children would take not as heirs, but as purchasers.

IV. But it is not material to the present case to inquire whether the title to the property was really such that the respondent, his wife, and father-in-law, might not in strictness make a conveyance that would turn out ultimately to be good. The only question here must be whether the title was a *marketable* one in the view of a court of equity, or, in other words, whether the court would have compelled the purchaser to complete the purchase under his contract? Now, courts of equity in this respect never undertake to declare whether the title be absolutely good or bad; they content themselves simply with declaring that the title is or is not clear of reasonable doubt in point of fact and in point of law. If, on examination, it turns out to be matter of uncertainty in point of law, whether a clear title can be made to a piece of property, the title is adjudged *unmarketable*, and the purchaser is relieved of his contract. (See Price v. Strange, 6 Madd. 159 ; Atkinson on Marketable Titles.) It results from these authorities that the respondent was not justified in bringing into market a suspicious title— that the purchaser was plainly in the right in rejecting this title offered to him, and that the appellants ought to be compensated for the costs and trouble incurred by them under the employment of the respondent, although the employment has resulted

in no other benefit to him than to show the worthlessness of his title.

*Glover & Richardson,* for respondent.

I. The gist of the action was the misrepresentation of the respondent; and the charge having been negatived by the finding of the court, every pretence of a recovery was at an end.

II. The court found that the appellants undertook to sell the land for the respondent, and their contract was not performed by doing any act short of effecting a sale. The respondent could only be responsible to them on the idea that they had rendered him a service, for he did not engage to pay according to the labor they might perform, but on the condition that they effected a sale.

III. The court having found that the appellant did not perform the service for which they contracted, they were not entitled to recover any thing. As the sale was not effected, and there was no custom as to the rate of compensation in cases where the sale fails for want of title, the plaintiffs could not recover; for there was no proof whatever as to the value of their services in such cases.

IV. The deed tendered to Meier conveyed a good title to the land. The deed of June 9th was not made to further any object contemplated in the 4th article. That article is predicated on the idea that Wm. Russell had no productive property, for he does not agree to convey such, but agrees to purchase productive real estate, and then to settle the income therefrom and the reversion as therein provided. The property embraced in the deed of June 9th was unproductive, and no doubt the taxes on it amounted to more than any income expected from it, and it would be a clear evasion of the duty imposed by the 4th article to pretend that the deed satisfied in part or whole the obligations assumed by Wm. Russell. The same thing might be insisted in reference to any property Wm. Russell would convey; and if every conveyance by him to Mrs. Allen were imputed to the 4th article, the others would be useless.

SCOTT, Judge, delivered the opinion of the court.

It is not easy to ascertain the precise point on which this cause turned in the court below.

1. As to the representations alleged to have been made by Allen, we are of opinion that in this case it is a matter of no importance whether they were express or implied; for if the owner of land sends a broker into market to dispose of it without any directions as to the title to be conveyed, he thereby gives an assurance to the world, by implication at least, that he has a valid title to that land both in law and equity.

2. The doctrine of marketable titles is purely equitable. Courts of law being the proper and peculiar tribunals for the decision of all legal questions, doubtful titles are not recognized by them. In the case of Romily v. James, (6 Taunt. 274,) the law on this subject is thus stated: "It is said the plaintiff will have made out his claim to recover back his deposit if a cloud is cast upon the title. That is not so in a court of law; he must stand by the judgment of the court as they find the title to be, whether good or bad; and if it be good in the judgment of a court of law, he can not recover back his deposit. If he had gone into a court of equity, it might have been otherwise. I know a court of equity often says, this is a title which, though we think it available, is not one which we will compel an involuntary purchaser to take; but that distinction is not known in a court of law." There is some contrariety of opinion on this subject, but the law seems to be settled as above stated. (Bogman v. Gutch, 7 Bingh. 379; Atkinson on Titles, p. 8, 9.) This being a suit at law, and the validity of the title arising, the question must be determined whether it is good or bad. We can not object to the title of the respondent that it is doubtful or unmarketable.

The finding of the court in relation to the validity of the deed tendered to Meier is not satisfactory; it does not clearly appear whether the court was of the opinion that the deed was valid to convey a good title. We know it may be said that,

whether it was effectual to convey title, is a question of law arising from the face of the facts found. This may be so. But we are not prepared to say that, from the finding, the deed tendered Meier was not effectual to pass the title. If the conveyance made in 1843 by Wm. Russell to Thos. Allen was in satisfaction of the 4th article of the marriage, it may be doubted whether the deed tendered was effectual. This fact is not found either way. Parol evidence may be admissible in determining it. An assertion made by the counsel of Allen, not appearing on the record, might have considerable influence in settling the question. The fact asserted was that the land conveyed by the deed of 1843, to Mrs. Allen, so far from yielding any rents or profits, was a burden and a source of expense, being unimproved. Without pretending to express any opinion as to the validity of the deed tendered to Meier, we will remand the cause, so that all the facts necessary to determine the validity of that deed may be investigated.

Judge Ryland concurring, the judgment will be reversed, and the cause remanded.